William J. BURKETT, Plaintiff,

v.

The CITY OF EL PASO, County of El Paso, Christopher Grijalva, Hugo Silex, Alfonso Nevarez, Jaime Esparza, and Chris Miller, Defendants.

No. EP 06 CA 0122 FM.

United States District Court,
W.D. Texas,
El Paso Division.

March 14, 2007.

802

Sam Snoddy, Law Office, El Paso, TX, for Plaintiff.

Joanne Bernal, First Assistant County Attorney, Maria Aurelia Salas–Mendoza, El Paso County Attorney's Office, Kitty Schild, El Paso, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS*

FRANK MONTALVO, District Judge.

On this day, the Court considered "Defendant Jaime Esparza, In his Individual Capacity, Motion to Dismiss Pursuant to Local Rule CV–12" ("Esparza's CV–12 Motion to Dismiss") [Rec. No. 22]; "Plaintiff's Response to Defendant Jaime Esparza, In his Individual Capacity, Motion to Dismiss Pursuant to Local Rule CV–12" ("Esparza CV–12 Response") [Rec. No. 41]; "Defendants' County of El Paso's and Jaime Esparza's, In his Official Capacity, Motion to Dismiss Pursuant to Local Rule CV–12, and Brief in Support Thereof, in Response to Plaintiff's First Amended Complaint" ("County's CV–12 Motion to Dismiss") [Rec. No. 23]; "Plaintiff's Response to Defendants' County of El Paso's and Jaime Esparza's, In his Official Capacity, Motion to Dismiss Pursuant to Local Rule CV–12, and Brief in Support Thereof, in Response to Plaintiff's First Amended Complaint" ("County CV–12 Response") [Rec. No. 44]; "Defendants' County of El Paso and Jaime Esparza, In his Official Capacity, Motion to Dismiss Pursuant to Rules 12(b)(1) and (6)" ("County's Motion to Dismiss") [Rec. No. 27]; "Plaintiff's Response to Defendants' County of El Paso and Jaime Esparza, In his Official Capacity, Motion to Dismiss Pursuant to Rules 12(b)(1) and (6)" ("County Response") [Rec. No. 36]; "Defendant Jaime Esparza's, In his Individual Capacity, Motion to Dismiss Pursuant to Rules 12(b)(1) and (6)" ("Esparza's Motion to Dismiss") [Rec. No. 29]; "Plaintiff's Response to Defendant Jaime Esparza, In his Individual Capacity, Motion to Dismiss Pursuant to Rules 12(b)(1) and (6)" ("Esparza Response") [Rec. No. 38]; "Defendant Chris Miller's, Individually and in his Official Capacity, Motion to Dismiss Pursuant to FRCP Rule 12(b)(6)

and Local Rule CV–12" ("Miller's Motion to Dismiss") [Rec. No. 32]; "Plaintiff's Response to Defendant Chris Miller's, Individually and in his Official Capacity, Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) and Local Rule CV–12" ("Miller Response") [Rec. No. 37]; and "Defendants' County of El Paso, Jaime Esparza, In his Official Capacity and Individual Capacity, and Chris Miller, In his Official and Individual Capacity, Reply to Plaintiff's Responses to Defendants' Motions to Dismiss Pursuant to Rules 12(b)(1) and (6) and CV–12" ("Reply") [Rec. No. 72] filed in the above-captioned cause. After carefully considering the motions, responses, replies, case file, and applicable law, the Court finds that it should GRANT the Motions to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Through the "First Amended Complaint of William J. Burkett, Application for Declaratory Judgment and Application for Injunctive Relief" [Rec. No. 13] ("Amended Complaint"), Plaintiff William J. Burkett ("Plaintiff") brings this action for relief for alleged violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Plaintiff also claims relief pursuant to 42 U.S.C. §§ 1985, 1986 and 1988, as well as 18 U.S.C. §§ 1961–1968. Defendants are the City of El Paso ("the City"), County of El Paso ("the County"), District Attorney Jaime Esparza ("Esparza"), Assistant District Attorney Chris Miller ("Miller"), and El Paso Police Officers Christopher Grijalva ("Grijalva"), Hugo Silex ("Silex"), and Alfonso Nevarez ("Nevarez").[1] Plaintiff also introduced a number of state claims

against various defendants. Plaintiff additionally seeks a declaratory judgment holding the District Attorney Management System ("DIMS") agreement and manual illegal, unconstitutional, and void pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202. Further, Plaintiff requests the Court to issue a permanent injunction against the City, County, and Esparza.

### A. Plaintiff's Factual Assertions

In his Amended Complaint, Plaintiff alleges he was and still is employed by the El Paso County Constable Department as Constable for Precinct Number Seven. He contends that on April 4, 2004, Plaintiff and two other individuals were inside a vehicle departing the Stampede Bar when El Paso Police Department ("EPPD") officers approached them. The officers ordered Plaintiff and the passengers to exit the truck. The officers then instructed Plaintiff to place his hands on the truck and spread his legs. Plaintiff maintains he at all times complied and "did not do anything to cause the abuse inflicted."[2] Plaintiff alleges that Officer Grijalva deliberately kicked his inner right knee, causing Plaintiff to lose consciousness. After regaining consciousness, Plaintiff alleges Officer Silex "stabbed [him] in the throat with a stinger light."[3] Plaintiff was then transported to a local hospital where he received treatment for his injuries.

EPPD officers subsequently arrested Plaintiff for disorderly conduct and retaliation and transported him to the El Paso County Detention Facility. Chris Miller, the Assistant District Attorney on duty at the District Attorney's Information Management System ("DIMS")[4] that night, ac-

---

1. On October 30, 2006, this Court granted Plaintiff's "Motion for Partial Dismissal" [Rec. No. 69], dismissing all of Plaintiff's claims against the City, Grijalva, Silex, and Nevarez. Accordingly, the Court will not address any Fourth Amendment excessive force

claims against the individual Officers in this Order.

2. Pl.'s Am. Compl., Rec. No. 13, p. 8.

3. *Id.* at 7.

4. According to Plaintiff's Complaint, the Dis-

cepted the case for prosecution on behalf of the El Paso County District Attorney's office. The District Attorney's office charged Plaintiff with "Obstruct Retaliation Harm/Threat, 2nd Degree Felony" in the 41st Judicial District Court of El Paso County, Texas. *State of Texas v. William Burkett*, No. 20040D06395.[5] Plaintiff was also charged in the Justice Court of El Paso, Precinct Number Three with "Intentionally and knowingly abuse another in a public place in an obviously offensive manner." *State of Texas v. William Burkett*, No. 305–1901CR.[6] The District Attorney's office later dismissed the charges against Plaintiff.

Plaintiff contends that Officer Grijalva's blow to his knee caused injury requiring surgery. Plaintiff asserts he underwent such surgery, incurring approximately $15,000 worth of medical expenses. Plaintiff alleges he still suffers knee pain as a result of Grijalva's alleged assault and cannot perform the same activities as he did before the incident. Plaintiff avers that he "is deeply disturbed and bothered about his debilitating and excruciating injuries."[7] Plaintiff also complains that the "false charges" filed, injured him. Plaintiff explains he now has a criminal record and "will now have to answer on any government security clearance questionnaire that he has been arrested by the EPPD."[8]

---

trict Attorney's Information Management System ("DIMS") constitutes an interlocal agreement involving the City, County, EPPD, and Esparza which allows prosecutors to screen warrantless arrest cases presented to them by peace officers. Under DIMS, the City pays the District Attorney's Office for Assistant District Attorneys ("ADA") to be available at all times to advise EPPD officers when they arrest a person. The DIMS attorney on duty then makes a charging decision within a short time after a person's arrest instead of the District Attorney's office making the charging decision weeks or months later. If the DIMS attorney accepts a case for prosecution, the police officer may file the case within 24 to 72 hours of the offense. An ADA sets bond over the telephone from a pre-set bond schedule created by the El Paso County Council of Judges.

Plaintiff describes the remaining process as: "After being booked into jail and an arrestee pays the bond set by the ADA, the arrestee would be released from jail without having seen a magistrate. After being booked into jail under DIMS and an arrestee [does not] pay the bond, [the arrestee] would appear before James Carter, the DIMS magistrate." Pl.'s Am. Compl., Rec. No. 13, p. 20. According to the DIMS agreement, "the operation of DIMS serves to increase the efficiency and effectiveness of local governments in their respective functions in the criminal justice system." Pl.'s Am. Compl., Rec. No. 13, ex. 8; 9.

Esparza requested the Texas Attorney General to render an opinion regarding the constitutionality of DIMS. *See* Letter from Hon.

Jaime Esparza, District Attorney, 34th Judicial District, to Nancy Fuller, Chair, Opinion Committee, Office of the Attorney General of Texas, at 1 (Feb. 1, 2006), RQ–0439–GA. The Attorney General accordingly considered the following question: "Is it lawful for municipal police officers of the City of El Paso to set reasonable bail for both misdemeanor and felony arrestees pursuant to articles 17.05, 17.20, and 17.22 of the code of Criminal Procedure, and for the Sheriff to accept such arrestees into the El Paso County Jail without the arrestee appearing before a magistrate for up to 24 hours in a misdemeanor case and for up to 48 hours in a felony case before the requirements of articles 14.06, 15.17, and 17.033 of the Code of Criminal Procedure must be satisfied?" *Id.* The Attorney General concluded that "[u]nder Code of Criminal Procedure article 17.20, a City of El Paso municipal police officer may set reasonable bail for defendants arrested on misdemeanor charges. And under article 17.22, a City of El Paso municipal police officer may set reasonable bail for defendants arrested on felony charges if no prosecution has yet been filed." Tex. Att'y Gen. Op. No. GA–457 (2006).

5. Pl.'s Am. Compl., Rec. No. 13, p. 9.

6. *Id.*

7. *Id.* at pg. 2

8. *Id.* at pg. 17.

## B. Plaintiff's Legal Assertions

As Plaintiff has voluntarily dismissed his claims against the City and the police officers involved in the alleged assault, only the County, Esparza and Miller remain as defendants in this action.[9] The gravamen of Plaintiff's Complaint against these Defendants, to the best of the Court's understanding is: the Defendants, through the DIMS program, violated Plaintiff's First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights by denying Plaintiff his right to be taken before a magistrate judge for a probable cause hearing. That is, the DIMS program improperly enabled Miller to make a "judicial determination" and set Plaintiff's bond, although Miller was not a magistrate. That said, it is not clear from Plaintiff's sixty-page Amended Complaint which causes of action he is alleging against each of the Defendants. Therefore, the Court construes Plaintiff's action as proceeding against all Defendants on all potential causes of action even briefly mentioned by the Amended Complaint.[10]

The Court now summarizes those causes of action. Plaintiff sues the County and Esparza and Miller, in their individual and official capacities, under 42 U.S.C. § 1983. He seeks redress under that statutory provision for the Defendants' alleged violations of Plaintiff's First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights. To the extent Plaintiff seeks to hold Defendants liable under § 1985 and § 1986, the Court understands him to allege that, pursuant to DIMS, the City, County, Esparza, Assistant District Attorneys, and the El Paso Police Department have all conspired in some way to obstruct justice by depriving Plaintiff of his constitutional rights. Plaintiff also seems to assert a claim under the Racketeer Influenced and Corrupt Organizations Act arguing the Defendants have somehow engaged in conduct of an enterprise through a pattern of racketeering activity by utilizing DIMS.

Turning to Plaintiff's state law claims, the Court understands Plaintiff to aver that Defendants intentionally and recklessly engaged in extreme and outrageous conduct, which, caused Plaintiff severe emotional distress. Finally, Plaintiff attempts to state a cause of action for "warrantless/false arrest and imprisonment" against all Defendants because Miller "acted with the intention of confining Plaintiff Burkett within fixed boundaries" and "Defendants Esparza, the City and County of El Paso created the DIMS program which made it possible for Burkett to be arrested and imprisoned illegally with his resulting damages." [11]

## C. Defendants' Motions to Dismiss

■ Defendants move the Court to dismiss all of Plaintiff's claims in their individual and official capacities pursuant to Local Court Rule CV–12 and Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[12] Specifically, Esparza and Miller

---

**9.** See supra text accompanying note 1.

**10.** While Plaintiff's Complaint is unclear, rambling, and difficult to interpret, the Court notes its duty to construe Plaintiff's pleadings as to "do substantial justice" and the Court has done its best to fulfill that duty. See FED.R.CIV.P. 8(f).

**11.** Pl.'s Am. Compl., Rec. No. 13, pg. 50–51.

**12.** Defendants also argue that the Court should dismiss most of Plaintiff's causes of action on the grounds that they are barred by the applicable statute of limitations. Because § 1983 has no statute of limitations provision, the Court looks to the state statute of limitations in personal injury cases. Owens v. Okure, 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The applicable limitations period is two years in Texas. Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir.1998). Here, the incident that is the subject of the lawsuit occurred on April 4, 2004. Although Plaintiff filed his Original Complaint within the limitations period, it is undisputed that

claim qualified immunity and prosecutorial immunity entitle them to dismissal of Plaintiff's claims under § 1983. They further argue Plaintiff's claims pursuant to § 1983, § 1985, § 1986, RICO, and state law claims of intentional infliction of emotional distress, malicious prosecution, and false arrest and imprisonment should be dismissed for failure to state a claim and lack of subject matter jurisdiction. The County also argues all of Plaintiff's federal claims should be dismissed for failure to state a claim and lack of subject matter jurisdiction. The County further urges the Court to dismiss Plaintiff's state law claims pursuant to governmental immunity, for failure to state a claim, and lack of subject matter jurisdiction.

## II. THE 12(B)(1) AND 12(B)(6) STANDARDS FOR DISMISSAL

■■ Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") allows a party to move to dismiss an action for lack of subject matter jurisdiction. The Court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." See Home Builders Ass'n of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir.1998). The Federal Rules provide that a defendant may submit a motion to dismiss for lack of subject matter jurisdiction before filing an answer. FED.R.CIV.P. 12(b). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. Ramming v. United States, 281 F.3d 158, 161 (5th Cir.2001). In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. Id. A Rule 12(b)(1) motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims which would entitle her to relief. See Home Builders Ass'n of Mississippi, Inc., 143 F.3d at 1010.

Plaintiff did not serve the Defendants until after the expiration of the limitations when he filed his First Amended Complaint on May 1, 2006.

According to Texas law,

a plaintiff must not only file suit but also use due diligence in procuring service on the defendant in order to toll the statute of limitations. The determination of due diligence is usually a fact question; the standard is the ordinary prudent person standard. However, lack of due diligence may be found as a matter of law if the plaintiff offers no excuse for his failure to procure service, or if the plaintiff's excuse conclusively negates diligence.... Only in rare instances have the Texas courts concluded that an excuse offered by the plaintiffs for failure to procure service negated the exercise of due diligence as a matter of law.

Saenz v. Keller Industries of Texas, 951 F.2d 665, 667 (5th Cir.1992) (citations omitted). According to one Texas Court of Appeals, the "purpose behind a statute of limitations is not only to encourage a plaintiff to prosecute his claims within a period of time but, just as important, to advise the defendant of the claim against him in a timely fashion so that he may prepare his defense and preserve evidence before the lapse of time has rendered this process difficult, if not impossible." Broom v. MacMaster, 992 S.W.2d 659, 664 (Tex.App.-Dallas 1999, no pet. h.).

Here, the parties agree that the Plaintiff failed to serve the Defendants within the two-year statute of limitations. Defendants accordingly argue Plaintiff's 1983 claims and state law claims are time-barred and should be dismissed on limitations. Plaintiff's responses do not even attempt to explain how he acted with due diligence in serving Defendants, but simply rely on the fact that Plaintiff complied with Federal Rule of Civil Procedure 4(m)'s 120 day deadline for service after the filing of the complaint. Although Plaintiff's arguments lack merit, the Court finds no reason to make a factual finding that Plaintiff failed to exercise due diligence in serving the Defendants as all of Plaintiff's claims are dismissed on the merits in this Order.

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal of all or part of a complaint "for failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim under Rule 12(b)(6) is viewed with disfavor and is rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). In considering a motion to dismiss for failure to state a claim, "a court must accept as true the well pleaded factual allegations and any reasonable inferences to be drawn from them." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994). Dismissal of a claim under Rule 12(b)(6) is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on such a motion, a Court may not look beyond the face of the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999). Finally, a court may dismiss a claim "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when viewed in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's favor. *Lowrey*, 117 F.3d at 247. A plaintiff, however, must plead specific facts, and not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

## III. ANALYSIS

### A. Plaintiff's Section 1983 Claims

#### 1. Title 42 U.S.C. § 1983

■■■ Title 42 U.S.C. § 1983 [13] creates a private cause of action for violations of federal constitutional rights perpetrated by any person acting under color of state law. To state a civil rights cause of action under § 1983, a plaintiff cannot rely on any theory of vicarious liability or *respondeat superior* to hold a supervisory official liable. *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir.1999). Further, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir.1995). "It is fundamental to our federal jurisprudence that state tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right." *Nesmith v. Taylor*, 715 F.2d 194, 195 (5th Cir.1983).

#### 2. Plaintiff Has Failed to State A Claim under § 1983

To begin, the Court notes Plaintiff complains at great length about DIMS' alleged noncompliance with various laws of the State of Texas. However, state law violations do not form the basis of § 1983 liability. *See, e.g., Fields v. City of South Houston*, 922 F.2d 1183, 1189–91 (5th Cir. 1991). Accordingly, the proper analysis is whether Plaintiff's Complaint sets forth a violation of a right or rights recognized in

---

**13.** 42 U.S.C. § 1983 states in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

the United States Constitution. In this regard, Plaintiff alleges:

> Defendants were acting under color of law ... and deprived the Plaintiff of rights secured to him by the Constitution of the United States, including, but not limited to, Plaintiff's
>
> a. First Amendment right to freedom of expression;
>
> b. Fourth Amendment right to be free from unlawful searches and seizure of Plaintiff Burkett;
>
> c. Sixth Amendment right to be informed of the charges filed against Plaintiff;
>
> d. Fifth and Fourteenth Amendments rights to due process of law; and
>
> e. Fourteenth Amendment rights to equal protection of the laws.[14]

While Plaintiff generally refers to the federal constitutional violations, it is unclear which factual assertions Plaintiff means to link to the respective alleged constitutional violations. While the Complaint is obscure and difficult to understand, the Court will attempt to decipher Plaintiff's lengthy allegations.

▮▮▮ As to the First Amendment, Plaintiff has failed to state a claim as he does not allege any facts stating a colorable claim for a First Amendment violation.[15] Nowhere in his Complaint does Plaintiff allege that any Defendant inter-fered with his speech in any way or identify any adverse action taken against him because of his protected exercise of speech. Further, in Plaintiff's responses to the Defendants' motions to dismiss, he does not even attempt to identify any such facts or address Defendants' arguments that the Court should dismiss his First Amendment claims.

▮▮▮ The Court also finds Plaintiff fails to state a claim with regard to any Fifth Amendment claim.[16] "The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir.2000). Plaintiff does not allege that any of the Defendants "were acting under authority of the federal government." *See id.* As none of the Defendants in the instant action are federal actors, it is clear that Plaintiff cannot state an actionable Fifth Amendment claim.[17]

▮▮▮ The Court next turns to Plaintiff's Sixth Amendment claim. While the Sixth Amendment provides the accused the right "to be informed of the nature and cause of the accusation" against him, the Sixth Amendment's protection "does not come into play until the government has committed itself to prosecution." *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir.

---

**14.** Pl.'s Am. Compl., Rec. No. 13, p. 3.

**15.** Plaintiff only refers to the First Amendment in one sentence of his sixty-page Amended Complaint and does not further cite any arguments or factual assertions dealing with the First Amendment. *See* Pl.'s Am. Compl., Rec. No. 13, p. 3. In addition to the fact that Plaintiff only makes one brief reference, it is unclear to the Court whether Plaintiff actually desires to maintain a cause of action under the First Amendment. In the Amended Complaint, the section listing "Violations of 42 U.S.C.1983" fails mention the First Amendment. *See* Pl.'s Am. Compl., Rec. No. 13, p. 50. As there are no "well pleaded factual allegations," this Court finds that Plaintiff cannot state a claim under any First Amendment legal theory. *See Tuchman*, 14 F.3d at 1067.

**16.** Again, Plaintiff only refers to the Fifth Amendment twice in his sixty-page Amended Complaint. *See* Pl.'s Am. Compl., Rec. No. 13, p. 3; 50. In addition, no arguments or factual assertions dealing with the Fifth Amendment are found in the Complaint.

**17.** The Court notes Plaintiff's due process claims under the Fourteenth Amendment are addressed later in this section.

1987). Plaintiff's claims fail as he has not set forth any factual allegations suggesting that Defendants' conduct did not meet the Sixth Amendment's requirements. Again, Plaintiff's responses do not address Defendant's arguments and wholly fail to provide any factual assertions in support of his Sixth Amendment claim.

After carefully reviewing Plaintiff's Complaint, the Court understands Plaintiff's primary argument to be that DIMS denied Plaintiff equal protection of the law and due process in two respects. First, it deprived Plaintiff of his right to a prompt determination of probable cause by a neutral and detached magistrate. Second, DIMS violated Plaintiff's right to have a neutral and detached magistrate fix the amount of his bail.

The Fourth Amendment requires "a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The Supreme Court refined its holding in *Gerstein*, explaining "a jurisdiction that provides judicial determination of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement" demanded by the Fourth Amendment. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)(refining the Supreme Court's holding in *Gerstein*, 420 U.S. at 125, 95 S.Ct. 854). In addition, "the Fourth Amendment does not compel an immediate determination of probable cause upon completion of administrative steps incident to arrest." *Id.* Further, "the Constitution does not require an adversary determination of probable cause." *Gerstein*, 420 U.S. at 123, 95 S.Ct. 854. Here, it is uncontested that EPPD officers

arrested Plaintiff without a warrant and that Plaintiff made bail before 48 hours elapsed. Had Plaintiff not made bail and been released, DIMS procedures required a determination of probable cause and the appropriateness of his bail amount. Therefore, Plaintiff's claim that DIMS violated his right to prompt presentation before a magistrate fails to establish a violation of a constitutional right.[18]

Further, Plaintiff asserts a violation of his Fourteenth Amendment right to "equal protection of the laws." The Fourteenth Amendment's Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a directive to treat all similarly situated persons alike. *City of Cleburne v. Cleburne Living Ctr.* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) *(citing Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). To establish an equal protection violation, a plaintiff must initially show that he or she was treated differently from other individuals similarly situated. *City of Cleburne*, 473 U.S. at 439, 105 S.Ct. 3249. Here, however, Plaintiff does not claim or otherwise provide any facts to support a finding that he is a member of any specific class or has been treated differently from any other class of people.

To the extent Plaintiff complains that Defendants violated his right to due process because a neutral and detached magistrate did not set his bail, Plaintiff similarly fails to state a claim. Plaintiff has failed to direct the Court to any precedent stating the United States Constitution requires a particular individual to fix the amount of bail; because the Constitution *does not.*

---

18. Regardless of the workings of DIMS, it is undisputed Plaintiff was allowed to go free on bond within 48 hours of his arrest. There-

fore, *as applied to him*, DIMS did not result in a violation of Plaintiff's Constitutional rights.

Article III of the United States Constitution defines and describes the judicial power of the United States. There is nothing in that Article which assigns the bail granting and fixing function to the courts. Generally, in the absence of a constitutional provision, the Legislature has the power define the jurisdiction and powers of the courts. 48 C.J.S. Judges § 40 at 1005. That is also true with respect to bail. *See, e.g.,* 18 U.S.C. § 3141.

*In re Floyd,* 413 F.Supp. 574 (D.Nev.1976).

In the case at bar, Plaintiff's bail was set by a pre-existing schedule. While there is little caselaw dealing with the federal constitutionality of non-judicial fixing of bail, the State of Texas, among other states,[19] allows persons other than a neutral and detached magistrate to set bail. In Texas, individuals allowed to set bail include police officers, in various situations. *See* TEX.CRIM. PROC.CODE §§ 17.20; 17.22. As previously addressed, Plaintiff's asserting a cause of action under § 1983 must show deprivation of a federal right, not a right under state law. Here, Plaintiff has made no showing that he enjoys a federally-protected right to have only a neutral and detached magistrate set bail. To the extent Plaintiff alleges a violation of state procedures, such a violation, if any, is not cognizable under § 1983.

■ Plaintiff has failed to plead facts, which if assumed to be true, establish that Esparza and Miller were personally involved in any of the alleged constitutional violations. Plaintiff has not pleaded any acts or omissions by Esparza or Miller that would show their personal involvement in the constitutional injuries Plaintiff allegedly suffered. As argued by Miller, "[t]he only specific acts of Defendant Miller that Plaintiff includes in his lengthy complaint are that he was called by the EPPD investigating officer, that he communicated with the officer regarding the facts surrounding plaintiff's arrest in order to make his decision whether to prosecute, and that he utilized a bond schedule approved by the El Paso County Council of Judges."[20] Esparza's only connection to the case revolves around his involvement in the implementation and management of the DIMS program. Insofar as Plaintiff alleges DIMS was the moving force behind the alleged due process/Fourteenth Amendment violations, as the Court has previously discussed, it finds that Plaintiff has not set forth a facially valid claim for a due process violation.

In sum, viewed in the light most favorable to the Plaintiff and with every doubt resolved in his favor, the Court finds Plaintiff has failed to state a claim upon which relief can be granted with regard to his § 1983 claims against Defendants. In the alternative, as discussed below, even if the Court were to find that Plaintiff states a cognizable claim under § 1983, it would

---

**19.** In *Clynch v. Chapman,* the plaintiff alleged that the defendant police officers violated the Eighth Amendment's excessive bail clause by imposing a bond in accordance with the "Police Departmental standard operating procedure for the sum that is automatically required as bond for DUI arrest." 285 F.Supp.2d 213, 219 (D.Conn.2003). Plaintiff contended the procedure violated the Eighth Amendment because the imposed bond was calculated without assessing individualized factors, including Plaintiff's lifelong residence in the town and lack of a criminal record. *Id.*

at 219–20. The District Court concluded that the officers were absolutely immune from § 1983 actions "related to performing the bail setting function assigned to Connecticut police officers under Conn. Gen.Stat. § 54–63c." *Id.* at 220. The court further held that "even if the police department's policy of automatic bail is at variance with Conn. Gen. Stat § 54–63c(a), the general function of setting bail was within [the defendant officer's] statutory authority." *Id.* at 221–22.

**20.** *Id.* at 4.

nonetheless conclude that Esparza and Miller are entitled to the defenses of qualified immunity and prosecutorial immunity and that no municipal liability is appropriate.

**B. Section 1983 Claims Against Esparza and Miller, in their Individual Capacities**

**1. Esparza and Miller's Qualified Immunity Defense**

As noted, the Court finds that even if Plaintiff has stated a colorable § 1983 claim against Esparza and Miller, the Court should nevertheless dismiss Plaintiff's § 1983 claim because Esparza and Miller have shown they are entitled to qualified immunity.

**a. Qualified Immunity Standard**

■■■■ Public officials performing discretionary functions are generally shielded from suit unless a plaintiff shows by specific allegations that the officials violated clearly established statutory or constitutional rights of which reasonable individuals would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir.1995); *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987). When defendants claim qualified immunity, a court must first determine whether the plaintiffs have alleged a violation of a clearly established constitutional right. *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir.1999) (citing *Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Next, the court must decide whether the right was clearly established when the alleged violation occurred. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Finally, the court must determine whether the record shows a violation actually occurred or at least gives rise to a genuine issue of material fact regarding whether the con-

duct violated a clearly established right. *Morris v. Dearborne*, 181 F.3d 657, 665 (5th Cir.1999). If the Court determines the official's conduct was unconstitutional, then it must also decide whether the conduct was nonetheless "objectively reasonable." *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir.1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■■■■ Qualified immunity is designed to avoid the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow*, 457 U.S. at 816, 102 S.Ct. 2727; *Lion Boulos*, 834 F.2d at 507. This limited form of immunity applies only to claims seeking "to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, if successfully established, the defense of qualified immunity requires a court to dismiss the pertinent claims against officials in their *individual capacity. Id.*

**b. Qualified Immunity Analysis**

■■■ Viewed in the light most favorable to the Plaintiff and with every doubt resolved in his favor, the Court finds it should dismiss Plaintiff's claims against Miller and Esparza as they are entitled to qualified immunity. Plaintiff has failed step one of the qualified immunity analysis, because, as previously discussed, Plaintiff fails to allege any facts showing that these Defendants violated clearly established constitutional rights. None of Plaintiff's allegations of constitutional violations state a cognizable claim.

■■■ Assuming, *arguendo*, that Plaintiff has established a violation of a clearly established federal constitutional right, the Court finds that Esparza and Miller's con-

duct was objectively reasonable. *See, e.g., Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir.1998) (holding a defendant may invoke qualified immunity if his conduct was objectively reasonable—even if the conduct infringed upon the plaintiff's constitutional rights). Miller contends none of his conduct violated a clearly established constitutional right and he "reasonably believed the actions in implementing said DIMS procedures [were] justified and legal under State and Federal law." [21] Miller is correct; it is undisputed that Miller's actions were those required of him pursuant to DIMS. It is also undisputed that DIMS mandates that arrestees who are not freed on bond appear before a magistrate within 48 hours. Under the then current state of the law, this procedure was reasonable. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). A similar practice was also found reasonable in *Jones v. City of Santa Monica*, 382 F.3d 1052 (9th Cir.2004). According to Miller, "at all times relevant he was in good faith performing discretionary functions and acting within the course and scope of his authority as a duly authorized assistant district attorney for the 34th Judicial District of Texas." [22] Plaintiff, on the other hand, has failed to plead any facts that would show Esparza and Miller's actions were unreasonable. The Fifth Circuit has recognized that "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir.1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). A careful review of Plaintiff's factually detailed Complaint compels the Court to conclude that these two Defendants' conduct

was at all times objectively reasonable. Nowhere does Plaintiff allege any facts that could be construed as not being objectively reasonable. Defendants Esparza and Miller are therefore entitled to qualified immunity.

### 2. Esparza and Miller's Prosecutorial Immunity Defense

Miller and Esparza also move to dismiss Plaintiff's various claims against them on the basis of absolute prosecutorial immunity. Even if the Court were to find Plaintiff states a claim under § 1983 against Esparza and Miller or that they are not entitled to qualified immunity, the Court finds Plaintiff's § 1983 claims against Esparza and Miller, in their individual capacities, should be dismissed as they are entitled to absolute prosecutorial immunity.

### a. Prosecutorial Immunity Standard

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *see also Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir.1991)(holding "prosecutors are absolutely immune from liability under § 1983 for their conduct 'in initiating a prosecution and in presenting the State's case,' because that conduct is 'intimately associated with the judicial phase of the criminal process.'") (citations omitted). Prosecutors are not entitled to absolute immunity, however, when performing administrative or investigative functions. *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606.

---

**21.** Def. Miller's Mot. to Dismiss, Rec. No. 32, pp. 7–8.

**22.** *Id.* at p. 7.

b. Prosecutorial Immunity Analysis

Plaintiff attempts to overcome Esparza and Miller's prosecutorial immunity defense by alleging that their actions fell outside "initiating the prosecution and in carrying the case through the judicial process." *See, e.g., Boyd v. Biggers,* 31 F.3d 279, 285 (5th Cir.1994). Specifically, Plaintiff alleges Miller was "performing the duties of a magistrate i.e. finding probable cause, designating and authorizing charges to be file [sic] issue a DIMS warrant number and set bonds which are not prosecutorial functions."[23] Further, Plaintiff maintains "Esparza and the ADAs were not acting in their official capacity under DIMS as state prosecutors in determining probable cause, authorizing charges to be filed, issuing DIMS warrants, and setting bonds for persons arrested by EPPD officers under DIMS which resulted in bypassing a neutral and detached magistrate."[24]

The Court finds Plaintiff does not plead facts suggesting that Miller's actions in subjecting the Plaintiff to the DIMS program were taken outside of his role as an assistant district attorney for El Paso County or was undertaken in bad faith. Rather, Plaintiff's allegations against Esparza and Miller arise from the fact of his arrest, detention, and prosecution. Miller took all of his actions relating to Plaintiff in his role as a prosecutor following his office's established policies. The DIMS program was one of those established policies, which Miller was not free to disregard. The Court finds that Miller is entitled to prosecutorial immunity because his actions were central to the task of initiating a prosecution against Plaintiff. More importantly, none of the acts pled actually

resulted in "by passing a neutral and detached magistrate."[25] Against these Defendants, Plaintiff does not challenge the legality of his initial detention and resulting arrest. Further, the DIMS program is designed to ensure appearances before a neutral and detached magistrate at most 48 hours after the arrest.

As to Esparza, Plaintiff fails to plead any facts which would show he was personally involved in any of the alleged constitutional violations. Even assuming the Court could recognize Esparza's personal involvement in Plaintiff's criminal proceedings, Esparza is also entitled to prosecutorial immunity. All of Esparza's actions as the District Attorney were, like Miller's, central to the task of initiating a prosecution against the Plaintiff. Accordingly, the doctrine of absolute prosecutorial immunity protects Esparza's and Miller's actions and they therefore are entitled to dismissal of all Plaintiff's § 1983 claims against them.

*C. Section 1983 Claims Against the County and Esparza and Miller, in their Official Capacities*

1. Preliminary Matters

Pursuant to 42 U.S.C. § 1983, Plaintiff brings an action for relief for alleged violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights against Esparza and Miller in their official capacities. A court should treat a suit against a governmental employee in his official capacity as a suit against the entity itself. *Ky. Bureau of State Police v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Here, Plaintiff has named the County as a Defendant

---

23. Pl.'s Resp. to Def. Miller's Mot. to Dismiss, Rec. No. 37, p. 5.

24. Pl.'s Resp. to Def. Esparza's Mot. to Dismiss Pursuant to CV–12, Rec. No. 41, p. 11.

25. *See supra* text accompanying note 18.

and seems to assert the same claims against the County as he does against Esparza and Miller. Accordingly, · the Court will treat Plaintiff's claims against Esparza and Miller in their official capacities as claims against the County.

### 2. Municipal Liability Pursuant to 42 U.S.C. § 1983

#### a. Legal Standard

In *Monell v. New York City Dept. of Social Servs.*, the Supreme Court recognized municipal liability under § 1983 where the execution of a municipal policy or custom inflicts a constitutional deprivation. 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In recognizing the potential for municipal liability under § 1983, the Court made it clear that a municipality may only be held liable when an action taken pursuant to official municipal policy or custom caused the constitutional violation. *Id.; see also Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). A "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). ▉ In order to hold a governmental entity liable for the acts of a nonpolicymaking employee, the plaintiff must allege and prove that: "(1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home For Chil-*

*dren, Inc. v. Gunn*, 81 F.3d 521, 532–33 (5th Cir.1996). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bryan County*, 520 U.S. at 405, 117 S.Ct. 1382 (citing *City of Canton*, 489 U.S. 378, 391–92, 109 S.Ct. 1197 (1989)). "Under certain circumstances, however, a municipality may incur § 1983 liability for its employees' acts when a municipal policy of hiring or training causes those acts." *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir.1992). To establish a cause of action under § 1983 for a hiring or training deficiency, a plaintiff must show: (1) the training or hiring procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. *See City of Canton*, 489 U.S. at 385–87, 109 S.Ct. 1197; *Benavides*, 955 F.2d at 972.

▉ In sum, when analyzing a § 1983 claim against a municipality, the Court must first decide if the defendant promulgated "an official policy, practice, or custom" which could subject it to § 1983 liability. *Monell*, 436 U.S. at 690–94, 98 S.Ct. 2018. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Moreover, when proceeding under § 1983, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Id.*

■ The Fifth Circuit has defined official policy or custom as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)). Wrongful conduct by an officer lacking policymaking authority cannot be considered a municipal "policy." *See Collins v. City of Harker Heights*, 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

B. Analysis

■ Assuming that the Plaintiff could establish that Defendant, "through" DIMS, promulgated an "official policy" or "custom," the Court would then need to determine whether that policy could be tied to a constitutional violation. In addition to all of the other elements, Plaintiff must show a direct, causal link between a municipal policy and the constitutional deprivations. *City of Canton*, 489 U.S. at 385, 109 S.Ct. 1197. "It is only when the 'execution of the government's policy or custom ... inflicts the injury that the municipality may be held liable under § 1983." *Id.* (citations omitted). The Supreme Court has held:

[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404, 117 S.Ct. 1382.

■ Here, Plaintiff cannot state a claim that DIMS is the moving force for any of the alleged constitutional violations. The Plaintiff has failed to produce any evidence of a constitutional deprivation. There is no evidence that DIMS or any other policy was a direct causal link to any of Plaintiff's alleged constitutional injuries. Accordingly, Plaintiff fails to state a claim that DIMS was the moving force to constitutional rights violation, and therefore Plaintiff's § 1983 claims against County should also be dismissed.

■ Finally, inasmuch as no constitutional violation resulted in the operation of the DIMS procedures, no acts undertaken by Miller and Esparza in their official capacity can be attributed to the County. The Court previously analyzed the same factual assertions regarding Miller and Esparza's actions in their individual capacities in Section B. Again, Plaintiff has not pled specific acts or omissions engaged in by Esparza, Miller, or the County that would show personal involvement in the constitutional injuries allegedly suffered by Plaintiff. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding Plaintiff cannot hold County liable solely because it employs a tortfeasor.). Plaintiff makes the broad allegation that all of the Defendants "had the power and duty to restrain the

other Defendants and prevent them from violating the law and the rights of the plaintiff, but each of the Defendants failed and refused to perform that duty, failed and refused to restrain the other Defendants, and became a party to the injuries inflicted on the Plaintiff." [26] The only specific acts of Defendant Miller that Plaintiff alleges in his Complaint are that Miller was called by the EPPD investigating officer, that he communicated with the officer regarding the facts surrounding plaintiff's arrest in order to make his decision whether to prosecute, and that he utilized a bond schedule pursuant to DIMS. Plaintiff's claims against Esparza are even weaker, as Plaintiff only alleges Esparza was involved in DIMS' implementation and administration.

Aside from identifying DIMS, Plaintiff does not allege facts or a policy that taken as true would support the allegation that an official policy or custom was the cause of Plaintiff's alleged constitutional violations. While Plaintiff discusses several citizen complaints, he fails to explain how these relate whatsoever to the facts at issue. Plaintiff pleads no facts exhibiting a pattern of similar instances in which other individuals were injured as he claims he was. Further, Plaintiff fails to present sufficient allegations that County's failure to train, if any, rose to the level of deliberate indifference to the rights of those arrested by EPPD. Accordingly, Plaintiff's § 1983 claims against Miller and Esparza, in their official capacities, should be dismissed for failure to state a claim.

D. *Section 1985 and 1986 Claims*

 Regarding Plaintiff's § 1985 claims against the Defendants, the Court understands Plaintiff to argue that pursuant to DIMS, the City, County, Esparza, Assistant District Attorneys, and the El Paso Police Department have all conspired in some manner to obstruct justice by depriving Plaintiff of his constitutional rights. Defendants move to dismiss Plaintiff's § 1985 claims, contending Plaintiff does not identify a class within the meaning of § 1985 nor any act by Defendants which would reasonably have been made in furtherance of a conspiracy. Defendants additionally contend that Plaintiff does not identify any racially-based animus. Although it is not clear from the Amended Complaint which subsection of § 1985 Plaintiff wishes to apply to this action, Plaintiff appears to pursue his claim under § 1985(2).[27] Title 42 U.S.C. § 1985(2) provides a civil conspiracy exists:

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

In sum, a civil conspiracy claim pursuant to § 1985(2) requires: a) a showing that two or more persons conspired to obstruct justice in a state court proceeding, and b) race or class-based animus motivated the conspirators. *Daigle v. Gulf State Utilities Co.*, 794 F.2d 974, 979 (5th Cir.1986). In *Griffin v. Breckenridge*, the Supreme Court interpreted § 1985's statutory language requiring "intent to deprive one of

---

26. Pl.'s Am. Compl., Rec. No. 13, p. 45.

27. The Miller Response contains the following averment: "The plaintiff states a claim because the second clause of section 1985(2) contains language that the conspirator's actions are motivated by an intent to deprive their victims of the equal protection of the laws." *See, e.g.*, Pl.'s Resp. to Def. Miller's Mot. to Dismiss, Rec. No. 37, p. 5.

equal protection of the laws" to mean that some racial or otherwise class-based discriminatory animus must drive the conspirators' actions. 403 U.S. 88, 91, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Fifth Circuit applied the *Griffin* rationale to claims under § 1985(2), as that part of the statute also refers to equal protection of the laws. *See Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir.1981).

▮ Plaintiff merely relies on his argument that the City, County, Esparza, Assistant District Attorneys, and the El Paso Police Department, pursuant to DIMS, conspired to obstruct justice by depriving Plaintiff of his constitutional rights. According to Plaintiff, "DIMS was created by Esparza and the defendants joined in to implement DIMS which is unlawful intimidation or coercion of arrestees by preventing an arresting EPPD officer from performing his duties of taking an arrestee like Plaintiff before a neutral and detached magistrate."[28] In the Miller Response, Plaintiff attempts to define the class under § 1985 as those arrested by the El Paso Police Department.[29] However, this is not a cognizable class existing independently of the actions attributed to the Defendants. *See Hamill v. Wright*, 870 F.2d 1032, 1038 (5th Cir.1989) (holding § 1985 does not protect a class that exists only because its members are treated similarly by the defendants). The Court finds Plaintiff has failed to sufficiently plead any acts by the Defendants which can be viewed as a conspiracy or allege that Defendants were motivated by racial or class-based animus. Viewed in the light most favorable to Plaintiff and with every doubt resolved in his favor, the Court finds Plaintiff has failed to state a claim upon which relief can be granted with regard to Plaintiff's conspiracy claims against the Defendants.

Section 1986 creates a cause of action against those who know of, and have the power to prevent, conspiracies to commit the wrongs described in § 1985. 42 U.S.C. § 1986. Since Plaintiff has failed to state a claim upon which relief can be granted under § 1985, he has similarly failed to state a claim under § 1986. *See, e.g., Hamilton v. Chaffin*, 506 F.2d 904, 914 (5th Cir.1975) ("Because of this failure to state a claim cognizable under Section 1985(3), appellant may not recover under the interrelated, dependent cause of action under Section 1986, action for neglecting to prevent a known conspiracy under Section 1985.").

### E. RICO Claims

▮ Plaintiff purports to make a claim pursuant to the Racketeer Influenced and Corrupt Organizations . Act ("RICO"), arguing the Defendants have somehow engaged in conduct of an enterprise through a pattern of racketeering activity by utilizing DIMS. RICO provides civil liability for individuals engaged in "a pattern of racketeering activity." 18 U.S.C. § 1962(a)(d). In order to establish a RICO claim, the Plaintiff must establish the existence of: "(1) a person who engages in (2) a *pattern of racketeering activity* [which is] (3) connected to the acquisition, establishment, conduct, or control of an *enterprise.*" *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988) (emphasis in original). To establish the "enterprise" element of a RICO claim, a plaintiff must "show evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 440 (5th Cir.1987). The enterprise must be "an entity separate and

---

28. Defs. County and Esparza, in Official Capacity, Mot. to Dismiss, Rec. No. 27, p. 7.

29. Pl.'s Resp. to Def. Miller's Mot. to Dismiss, Rec. No. 37, pp. 7–8.

apart from the pattern of activity in which it engages." *Id.* at 441 (citations omitted). "To avoid dismissal for failure to state a claim, a plaintiff must plead specific facts ... which establish the existence of an enterprise." *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989).

 Defendants contend the Court should dismiss Plaintiff's RICO claims as a matter of law for failure to state a claim. As Miller argues, "[t]here is no complaint that anyone from either the Police Department or District Attorney's office has tried to influence Defendant Miller with regard to his decision in accepting the criminal complaint for prosecution." [30] Plaintiff's replies include no factual assertions on this point, nor does Plaintiff direct the Court to any factual assertions in his Amended Complaint regarding his RICO claims. Instead, Plaintiff merely cites case law discussing the leniency the Court should afford RICO claims at the pleading stage. For these reasons, the Court finds Plaintiff has failed to plead any facts which would establish the conduct of an enterprise, a meeting of the minds, intent to conspire, or any pattern of racketeering activity. Plaintiff makes no allegations that any of the Defendants were associated in any manner with one another apart from their responsibilities at the District Attorney's office. Although not specifically argued by the Plaintiff, the Court also finds DIMS cannot be considered "an entity separate and apart" from the District Attorney's office. *See Atkinson,* 808 F.2d at 440. Accordingly, viewed in the light most favorable to the Plaintiff and with every doubt resolved in his favor, the Court finds Plaintiff has failed to state a claim upon which relief can be granted regarding to his RICO claims against the Defendants.

*F. State Law Claims*

 In addition to Plaintiff's federal law claims, Plaintiff alleges multiple state law claims against the Defendants.[31]

[I]n any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367(c), the Court *may* decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially dominates the claims over which the court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, where there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). When a district court has dismissed all federal claims from a cause before trial, the general rule in our Circuit directs district courts to decline to exercise jurisdiction over supplemental state law claims. *Batiste v. Island Records, Inc.,* 179 F.3d 217, 227 (1999). However, the rule is "neither mandatory nor absolute." *Id.* In determining whether to retain jurisdiction over the state law claims, the court should consider the provisions of 28 U.S.C. § 1367(c) and issues of judicial economy, convenience, fairness, and comity. *Id.*

The Court finds this case does not present any novel or complex issues of state law and there are no "exceptional circum-

---

**30.** Def. Miller's Mot. to Dismiss, Rec. No. 32, pp. 12–13.

**31.** The Court again notes that state tort claims are not actionable under § 1983. *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir. 1983).

stances" present that compel declining jurisdiction. Having considered § 1367(c), judicial economy, convenience, fairness, and comity, the Court finds that justice will best be served by retaining jurisdiction over the state law claims. The Court is intimately familiar with the parties and issues presented in the cause.

■■■ Having resolved the issue of its supplemental jurisdiction over Plaintiff's state law claims, the court now considers the parties arguments regarding the alleged state law violations. Defendants argue that Plaintiff's state law claims should be dismissed because nowhere in his Complaint does Plaintiff allege, nor can he, that the State has consented to suit for false arrest/imprisonment or intentional infliction of emotional distress. Under Texas law, the State and its governmental units are immune from suit absent a statute or express legislative permission. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999). The Texas Tort Claims Act ("TTCA") waives immunity for three types of claims: (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal or real property; and (3) claims arising from premise defects. TEX. CIV. PRAC. & REM.CODE §§ 101.021; 101.022. TTCA does not waive immunity with respect to claims "*arising out of* assault, battery, false imprisonment, or any other intentional tort." *Id.* §§ 101.021; 101.057 (emphasis added).

Persons sued in their official capacity may raise any defense available to the governmental unit, including sovereign immunity.... An individual sued in an official capacity may enjoy the protections of sovereign immunity to the same extent as those protections are available to the person's employer and thus, if the governmental unit would be immune due to sovereign immunity, so is the governmental official sued in his official capacity.

*Nueces County v. Ferguson*, 97 S.W.3d 205, 214–215 (Tex.App.-Corpus Christi, 2002, no pet.) (citations omitted). Here, none of Plaintiff's state law tort claims fall into the category for which the TTCA waives immunity. Accordingly, the court will dismiss Plaintiff's state law claims against the County and Esparza and Miller, in their official capacities, based on the County's governmental immunity.

■■■ Under Texas law, absolute prosecutorial immunity is an affirmative defense for which "Texas courts follow federal jurisprudence and apply the functional approach of *Imbler v. Pachtman." Clawson v. Wharton County*, 941 S.W.2d 267, 271 (Tex.App.-Corpus Christi, 1996, writ denied). Having previously found in this Memorandum Opinion and Order that Esparza and Miller are entitled to prosecutorial immunity under federal law because their actions were all intimately involved in the judicial phase of the criminal process, the Court finds Esparza and Miller are entitled to prosecutorial immunity with respect to the state law claims against them in their individual capacities.

Further, insofar as Plaintiff seems to invoke the Texas Constitution, he is not specific regarding any state constitutional provision the Defendants allegedly violated. The County thus argues "[s]ince Plaintiff does not allege violation of any specific state constitutional provisions, he has certainly not shown any right to sue for monetary damages specifically enunciated in any provision. Therefore any claims Plaintiff is making under the Texas Constitution should be dismissed." [32] The Court agrees and finds Plaintiff has failed to state a claim for a violation of a state constitutional or statutory right. *See*

---

**32.** Defs.' County and Esparza, in Official Capacity, Mot. to Dismiss, Rec. No. 27, p. 15.

*Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex.2004) (holding if the legislature grants private standing to bring an action for violation of a statute, it must clearly do so.).

■ Even though the Court dismisses Plaintiff's state law claims pursuant to the doctrines of governmental and prosecutorial immunity, the Court notes that Plaintiff seeks damages for intentional infliction of emotional distress. However, Plaintiff is clearly not entitled to relief as the Texas Supreme Court has held that, where the gravamen of a plaintiff's complaint is actually another tort, such as a constitutional civil rights violation or false imprisonment, a cause of action for intentional infliction of emotional distress is not available. *Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex.2004). Because Plaintiff's claims against Defendants for intentional infliction of emotional distress are based on the same operative facts as his claims against those Defendants for alleged civil rights violations, Plaintiff cannot pursue his intentional infliction of emotional distress claims. *See id.*

For the reasons discussed above, the Court dismisses all of Plaintiff's state law claims against all Defendants.

### G. Declaratory and Injunctive Relief

As this Memorandum Opinion and Order dismisses all of Plaintiff's claims still pending against all Defendants, no case or controversy exists between the parties. Accordingly, there is no basis for Plaintiff's requests for declaratory and injunctive relief and the Court therefore denies them.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that "Defendants' County of El Paso and Jaime Esparza, In his Official Capacity, Motion to Dismiss Pursuant to Rules 12(b)(1) and (6)" [Rec. No. 27] is **GRANTED.**

**IT IS FURTHER ORDERED** that "Defendant Jaime Esparza's, In his Individual Capacity, Motion to Dismiss Pursuant to Rules 12(b)(1) and (6)" [Rec. No. 29] is **GRANTED.**

**IT IS FURTHER ORDERED** that "Defendant Chris Miller's, Individually and in his Official Capacity, Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) and Local Rule CV–12" [Rec. No. 32] is **GRANTED.**