## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20240

COURTNEY SATTERWHITE,

Plaintiff–Appellant,

v.

CITY OF HOUSTON,

Defendant–Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-1929

Before SMITH, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Courtney Satterwhite, an employee of the City of Houston, reported his coworker, Harry Singh, for making an offensive comment. When Singh later became Satterwhite's supervisor, he recommended Satterwhite be demoted for various non-retaliatory reasons. The City agreed and demoted Satterwhite. Satterwhite filed suit, alleging unlawful retaliation under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act (TCHRA).

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20240

The district court granted summary judgment to the City because Satterwhite failed to provide sufficient evidence of a causal link between his allegedly protected activity and his demotion. We now affirm because Satterwhite did not engage in a protected activity.

**I**

The City hired Satterwhite in 1993 as an Assistant City Controller I. By March 2010, Satterwhite had been promoted to Assistant City Controller V, and Singh was the Deputy Director of the Controller's Office; Singh did not directly supervise Satterwhite at this time.

During a March 22 meeting attended by Satterwhite, Singh, and others, Singh made a comment that referenced Hitler. Satterwhite asserts that Singh used the phrase "Heil Hitler," while Singh maintains he said, "you know, we're not in Hitler court." After the meeting, Satterwhite informed Singh that another city employee, Daniel Schein, was offended by Singh's remarks. Although Singh apologized to Schein and Schein declined to file a formal complaint, Satterwhite reported the incident to the Deputy Director of Human Resources, who reported it to the City's Chief Deputy Controller, Chris Brown. Brown verbally reprimanded Singh. After his verbal reprimand, Singh approached Schein to inquire why he had reported the incident to Brown. Schein informed Singh that Satterwhite had reported the comment.

In June, Singh was promoted to Acting Deputy City Controller, and Satterwhite began reporting directly to Singh.

The next month, the City Controller's Office and the City Office of Inspector General (OIG) received identical letters from two individuals claiming to be members of the Anti-Defamation League. The letter complained of the "Heil Hitler" incident involving Singh and Singh's later promotion. The OIG investigated the incident and determined that "Singh made a comment to Ms. Martina Lee that they were not running a Hitler court." The OIG also

concluded Singh's statement violated an executive order of the mayor of Houston prohibiting city employees from using "inappropriate or offensive racial, ethnic or gender slurs, connotations, words, objects, or symbols."

Over the course of the next few months, Singh disciplined Satterwhite on multiple occasions. One incident involved Satterwhite being unavailable at his desk for a prolonged length of time without informing others of his whereabouts, contrary to office policy. Singh later met with Satterwhite to discuss this absence and verbally reprimand him. Satterwhite purportedly became upset and yelled at Singh. In September, Singh formally disciplined Satterwhite for changing the policy regarding how the office handled incoming government mail without properly communicating information about the change. On September 21, Satterwhite sent Singh an email expressing his belief that Singh's reprimands were retaliation for having reported the "Heil Hitler" incident. Shortly thereafter, Singh, pointing to Satterwhite's verbal and formal reprimands, recommended to City Controller Ronald Green that Satterwhite be demoted. Satterwhite was given an opportunity to respond to the stated reasons for demotion at a hearing.

After the hearing, in which Satterwhite argued that Singh was retaliating against him for reporting the "Heil Hitler" incident, Green demoted Satterwhite to Assistant City Controller IV, lowering his salary by two pay grades. Satterwhite subsequently filed a complaint with the EEOC, and after receiving notice of his right to sue, brought suit in the district court alleging unlawful retaliation under Title VII and the TCHRA. The district court granted summary judgment to the City because Satterwhite could not establish that his reports of the "Heil Hitler" incident were a but-for cause of the demotion. Satterwhite now appeals.

No. 14-20240

## II

We review a district court's grant of summary judgment de novo.[1] Summary judgment is appropriate if, viewing the evidence in the light most favorable to Satterwhite, the City shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[2] A genuine issue of material fact exists if a reasonable jury could return a verdict for Satterwhite.[3]

## III

Title VII prohibits employers from engaging in retaliatory action against employees for opposing unlawful employment practices.[4] To set out a prima facie case of retaliation under Title VII, an aggrieved employee must show: "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action."[5]

The *McDonnell Douglas*[6] burden-shifting test applies to Title VII unlawful retaliation cases.[7] If Satterwhite is able to establish a prima facie

---

[1] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

[2] *See* FED. R. CIV. P. 56(a); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004).

[3] *See Jackson*, 602 F.3d at 377 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] 42 U.S.C. § 2000e-3(a) provides in part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

[5] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)).

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[7] *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

case of unlawful retaliation, the burden then shifts to the City to articulate a legitimate, non-retaliatory reason for the demotion.[8]  If the City carries this burden, Satterwhite must show that the City's explanation is a pretext for unlawful retaliation.[9]

While the district court granted summary judgment to the City because it held Satterwhite failed to establish a causal link between Satterwhite's activities and his demotion, we affirm because Satterwhite's activities were not protected under Title VII.[10]

Satterwhite asserts that he engaged in two distinct protected activities: (1) making an oral report to human resources that Singh used the phrase "Heil Hitler" in a meeting, and (2) answering questions in connection with the OIG's investigation of the "Heil Hitler" incident.  While Satterwhite's actions could qualify as *opposing* under 42 U.S.C. § 2000e-3(a),[11] for his actions to be protected activities Satterwhite must also have had a reasonable belief that Singh's comment created a hostile work environment under Title VII.[12]

No reasonable person would believe that the single "Heil Hitler" incident is actionable under Title VII.  The Supreme Court has made clear that a court

---

[8] *See id.*

[9] *See id.*

[10] *See CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 274 (5th Cir. 2009) ("[W]e may affirm a grant of summary judgment on any ground presented to the district court for consideration, even though it may not have formed the basis for the district court's decision." (citation omitted) (internal quotation marks omitted)).

[11] *See Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 276-77 (2009).

[12] *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) ("Because Turner could not have reasonably believed that Colston's conduct . . . constituted an unlawful employment practice under Title VII, this incident cannot give rise to protected activity."); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam) (dismissing a retaliation claim because "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard.").

determines whether a work environment is hostile "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[13]  Furthermore, "isolated incidents (unless extremely serious)" do not amount to actionable conduct under Title VII.[14]  We have accordingly rejected numerous Title VII claims based on isolated incidents of non-extreme conduct as insufficient as a matter of law.[15]

In *Turner v. Baylor Richardson Medical Center*, a black employee complained of her supervisor's racially insensitive remarks, including an incident when the supervisor referred to inner-city children as "ghetto children."[16]  After being terminated, the employee filed suit alleging, among other claims, unlawful retaliation.[17]  We held that the employee had not established a prima facie case of retaliation because the employee "could not have reasonably believed" that the isolated comments constituted an unlawful

---

[13] *Faragher v. City of Boca Raton*, 524 U.S. 775,  787-88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002) ("Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment.").

[14] *Faragher*, 524 U.S. at 788.

[15] *See, e.g.*, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405-06 (5th Cir. 1999) (rejecting a race-based termination claim because evidence of discrimination only revealed isolated incidents); *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194-95 & n.5 (5th Cir. 1996) (reversing a jury award based on a hostile-work-environment claim stemming from single incident in which a supervisor provided an employee with offensive religious materials); *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (per curiam) (rejecting a hostile work environment claim because "the complained of conduct occurred sporadically over a several year period and c[ould not] accurately be described as pervasive. Additionally, no single incident was severe enough to independently support a hostile work environment claim.").

[16] *Turner*, 476 F.3d at 342.

[17] *Id.* at 345.

employment practice.[18] Similarly here, Satterwhite acknowledges that Singh's comment was a single and isolated incident.  He could not have reasonably believed that this incident was actionable under Title VII, and therefore, it "cannot give rise to protected activity."[19]

Satterwhite argues that the "Heil Hitler" incident must be an unlawful employment practice because the OIG found that it violated an executive order of the mayor of Houston prohibiting the use of racial, ethnic, and gender slurs. But the definition of "unlawful employment practice" in Title VII is defined by Congress not state or local laws,[20] and as previously discussed, no reasonable person could find the "Heil Hitler" incident alone satisfied Congress's definition.  Accordingly, Satterwhite has failed to establish a prima facie case of retaliation.

## IV

Satterwhite also appealed the district court's judgment with respect to his claim under the TCHRA.  One purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."[21]  Accordingly, the Supreme Court of Texas has "consistently held that th[e] analogous federal statutes and the cases interpreting [Title VII] guide [its] reading of the TCHRA."[22]  Satterwhite agrees that his TCHRA claim is "analyzed under the same standard"[23] as his Title VII claim.  Therefore, for the same reasons Satterwhite's Title VII claim fails, his TCHRA claim fails.

---

[18] *Id.* at 349.

[19] *Id.*

[20] 42 U.S.C. § 2000e-2 to -3.

[21] TEX. LAB. CODE ANN. § 21.001.

[22] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012).

[23] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012).

No. 14-20240

\*      \*      \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.