# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2016

Lyle W. Cayce
Clerk

No. 15-60380

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

> Plaintiff - Appellant

v.

RITE WAY SERVICE, INCORPORATED,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before CLEMENT, GRAVES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

It has long been the law in this and other circuits that a plaintiff contending that she was retaliated against for proactively reporting employment discrimination need not show that the discrimination rose to the level of a Title VII violation, but must at least show a reasonable belief that it did. *See generally Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981). In this case, we address whether that same "reasonable belief" standard applies to a retaliation claim brought by a third party witness who was fired soon after answering questions in response to a company investigation into harassment allegations. *See Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 277–78 (2009)

No. 15-60380

(recognizing that a retaliation claim may be based on a complaint solicited by the employer).

## I

The Equal Employment Opportunity Commission brings this antiretaliation claim on behalf of Mekeva Tennort. Tennort was employed as a general cleaner for Rite Way Service, Inc., a janitorial services contractor with the Biloxi school system. She worked at Biloxi Junior High School for two full school years—2009–2010 and 2010–2011—and was rehired in August 2011 for the 2011–2012 school year. The breaks in that employment were not the result of any performance problems, but of the summer breaks from school when the Biloxi schools did not use Rite Way.

At the beginning of the 2011–2012 school year, Tennort's supervisor was let go and replaced by an interim supervisor, Willie Harris. Harris assumed this role on approximately August 5, 2011. Within one week, Tennort observed two interactions between Harris and another general cleaner, Linda Quarles, that troubled her. The first involved Harris pretending to smack Quarles's bottom and saying, "ooh wee." Tennort did not report the incident or speak to either Harris or Quarles about it, because she "didn't want to get involved."

Shortly thereafter, on August 11th, Tennort and Quarles were together on school property when Harris told Quarles that she should not have a cell phone in her back pocket pursuant to Rite Way policy. Tennort expressed surprise that Harris could tell what was in Quarles's pants pocket and stated that "somebody must be looking real hard at [Quarles's] behind." Harris responded that Quarles's pants were tight. Quarles took offense, pulling at her pants to show that they were not tight and telling Harris not to worry about how tight her pants were. Harris then said, "I'm a man, I'm gonna look." The comment visibly upset Quarles.

No. 15-60380

After this incident, Quarles complained to a police officer stationed at the junior high school and to Rite Way that Harris had sexually harassed her. She identified Tennort as an eye witness. Rite Way began investigating Quarles's complaint.

On the morning of August 18th, Alex McCullom—Rite Way's Project Manager for the Biloxi school system—came to the junior high school and questioned Tennort about the "I'm gonna look" incident. According to Tennort, McCullom tried to talk her out of reporting what she had seen, stating "you know what they do to people who do stuff like this" and that Quarles was "nothing but trouble." Despite these statements, Tennort wrote out her report and gave it to McCullom. As discussed in more depth below, the EEOC views the giving of her report as the protected activity against which Rite Way could not retaliate.

Approximately two days after this meeting, Rite Way decided to separate Harris and Quarles; Harris was transferred away from Biloxi Junior High School. Another Rite Way employee—oddly enough, Harris's brother-in-law—took over as Tennort's and Quarles's supervisor.

Tennort's tenure under her new supervisor was both eventful and short-lived. Over the next five weeks, she received two written warnings and up to two oral warnings for poor job performance.[1] Her alleged infractions included not properly cleaning areas assigned to her, tardiness, and insubordination. These warnings were the first that Tennort had received since beginning her employment with Rite Way in 2009. As to both of the written warnings,

---

[1] After she was terminated, Tennort requested her employment file and discovered two write-ups for oral warnings dated August 26, 2011. She states that she "had never seen those write-ups before" and that "no manager or supervisor had talked to [her] about either one of these write-ups."

3

No. 15-60380

Tennort disagreed that the criticism was justified and explained her position in writing on the warning itself.

Tennort received a third strike when she was written up on September 26, 2011 for "neglect of duty" and "not following direction." She was immediately terminated.

## II

The EEOC asserts that Tennort's purported performance issues were fabricated, and that Tennort was terminated as punishment for her decision to corroborate the "I'm gonna look" incident between Harris and Quarles. Rite Way moved for summary judgment on the claim, giving multiple reasons why it was entitled to judgment as a matter of law.

The district court granted summary judgment on the basis of Rite Way's first argument: that Tennort did not engage in protected conduct under Title VII's antiretaliation provision. It concluded that the requirement that a retaliation plaintiff have a "reasonable belief" that a Title VII violation occurred applies in the context of someone like Tennort, who was responding as a third party witness to a company inquiry. Applying that standard, and citing cases that rejected sexual harassment claims on summary judgment, it found that Tennort could not have reasonably believed that Harris's conduct violated Title VII.

We review that summary judgment ruling de novo, applying the same standard as the district court in the first instance. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014). We interpret all facts and draw all reasonable inferences in favor of the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). Summary judgment is appropriate only when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

4

No. 15-60380

## III

Under Title VII's antiretaliation provision, protected activity can consist of either: (1) "oppos[ing] any practice made an unlawful employment practice by this subchapter" or (2) "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The first of these is known as the "opposition clause;" the second as the "participation clause."

On appeal, the EEOC argues only that Tennort's August 18th report was protected by the opposition clause.[2] Its position finds support in *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 555 U.S. 271 (2009). Prior to *Crawford*, it was not clear that complaints solicited by the employer—as opposed to complaints initiated by the plaintiff employee—could amount to "opposition" under the statute. The *Crawford* decision settled that they could.

> [A] person can "oppose" by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.

*Id.* at 277–78.

---

[2] It argued below that the participation clause also applied, but sensibly has dropped that argument as "[e]very Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 49 (2d Cir. 2012); *cf. Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (calling the participation clause "irrelevant" when no formal EEOC charge had been filed at the time of the alleged retaliatory discharge, even though the employee had complained internally of alleged race discrimination); *see also* 1 B. Lindemann & P. Grossman, EMPLOYMENT DISCRIMINATION LAW 15-9 (5th ed. 2012) ("Because § 704(a) protects participation in only 'an investigation, proceeding or hearing *under Title VII*,' an employee's statements during an employer's internal investigation that is conducted independently of any EEOC charge generally have been held not protected by the participation clause.").

No. 15-60380

*Crawford* thus confirms that solicited complaints like Tennort's constitute "opposition." But the opposition clause does not require opposition alone; it requires opposition *of a practice made unlawful by Title VII. See* 42 U.S.C. § 2000e-3(a). We have addressed this statutory language before, in *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. Unit A Sept. 1981), a case involving affirmative rather than solicited opposition.

*Payne* addressed whether this "practice made unlawful" language requires the employee to prove that the employment practice he complained of was unlawful, or whether it was enough that he reasonably believed the employment practice to be unlawful. *See* 654 F.2d at 1137. We determined that the latter position was consistent with the text of the opposition clause and better-suited "[t]o effectuate the policies of Title VII and avoid the chilling effect that would otherwise arise . . . ." *See id.* at 1137–40.

We have since noted that *Payne*'s reasonable belief standard is "in tension with the plain text" of Section 704(a), "which appears to require that the employer's practice actually be unlawful." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 n.2 (5th Cir. 2013). Nonetheless, *Payne* remains good law. It is also in line with the law of every other circuit court. 2 Lex K. Larson, EMPLOYMENT DISCRIMINATION § 34.03[2], at 34-40 (2d ed. 2015) (describing how every circuit has adopted an objective "reasonable belief" requirement; most also include a subjective "good faith" requirement). The Supreme Court has not taken a position on the reasonable belief standard. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (per curiam) (stating that the Court has "no occasion to rule on the propriety" of the Ninth Circuit's interpretation that the opposition clause applies to "practices that the employee could reasonably believe were unlawful" because "no one could reasonably believe that the incident [opposed in this case] violated Title VII").

6

No. 15-60380

Despite the universal and longstanding application of this "reasonable belief" standard, the EEOC urges us to forego it in this retaliation case because Tennort did not affirmatively complain about Harris's conduct, but merely spoke up in response to questioning. The EEOC contends that this result would be consistent with *Crawford*, where no such reasonable belief standard was imposed.

The EEOC's argument makes too much of the absence of a discussion of reasonable belief in *Crawford*. That case presented a narrow issue: whether passive reporting could ever meet Section 704(a)'s requirement of "oppos[ing]" an employment practice. It did not grapple with whether the conduct opposed in that case was "an unlawful employment practice" as elsewhere required in the opposition clause. If anything, creating a lower threshold for reactive plaintiffs bringing retaliation claims would be at odds with *Crawford*'s reasoning that the language of the opposition clause does not permit courts to treat reactive opposition any differently than proactive opposition.

Nor are we persuaded to dispense with the reasonable belief standard for the policy reasons articulated by the EEOC. It argues that requiring reactive complainants to have a reasonable belief regarding the unlawfulness of the behavior they have witnessed would "frustrate the . . . function and purpose" of Title VII. But many of the points it makes have no greater force in the reactive context than in the proactive one. For example, the EEOC warns that "third party witnesses" will not "come forward in an internal investigation" out of uncertainty whether they "would be protected from retaliation," thus "deter[ring] the reporting of Title VII violations essential for the enforcement of the statute's antidiscrimination provision." This same argument can and has been made about proactive complainants. *See, e.g., Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1045 (7th Cir. 1980) (stating that a literal reading of the opposition clause would "undermine[] Title VII's central

7

purpose, the elimination of employment discrimination by informal means" and "destroy[] one of the chief means of achieving that purpose, the frank and nondisruptive exchange of ideas between employers and employees"); *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) (stating concern that requiring proof of illegality before an internal complaint is afforded protection against retaliation would "chill" the "resolution of [complaints of discrimination] without governmental prodding" and "force employees to file formal charges rather than seek conciliation or informal adjustment of grievances").[3] Indeed, the reasonable belief standard is itself a product of this concern—a compromise position struck by courts to avoid too parsimonious a grant of protection under the opposition clause yet still maintain a connection between what the plaintiff is "opposing" and the discriminatory conduct Title VII forbids.

Indeed, despite its attempt to do away with the reasonable belief standard in *Crawford* cases, the EEOC recognizes that the opposed conduct must have something to do with Title VII in order to support a retaliation claim. We do not understand it to be arguing, for example, that an employee who believes she was fired for making statements about accounting fraud in response to an internal investigation would be able to bring a Title VII

---

[3] Another example is the EEOC's argument that a third party witness who provides information about harassment in response to an inquiry is at an information disadvantage compared with the victim. There is something to this. A third party may not know if she has witnessed the entirety of the harassing behavior, or only a snippet. Yet the same is true of a third party who affirmatively complains of discrimination. Despite this, we have applied the "reasonable belief" standard to retaliation cases involving proactive complaints by both victims and third parties. *Payne* itself appears to have involved the latter situation. *See* 654 F.2d at 1134–35 (describing plaintiff's oppositional activity as participating in a boycott targeting retailers including his employer for not hiring black people in money-handling and supervisory positions; no indication that plaintiff himself, who worked in the employer's farm operations, sought that type of employment); *see also Satterwhite v. City of Houston*, 602 F. App'x 585, 588 (5th Cir. 2015) (per curiam) (resolving third party's retaliation claim by considering whether the third party "had a reasonable belief that [the comment complained of] created a hostile work environment under Title VII").

retaliation case. But the EEOC has not articulated a standard that would require some relationship between the opposition and a Title VII violation, albeit a showing less than a "reasonable belief" that Title VII was violated. We are reluctant to create yet another standard for assessing Title VII liability, as some confusion already exists concerning those that govern underlying violations and the one that governs reasonable belief in the retaliation context.[4]

We are therefore not persuaded to establish a different standard for retaliation cases involving reactive opposition by third parties. The statute, case law, and interest in uniformity and ease of application support applying the "reasonable belief" standard to retaliation cases involving both proactive and reactive opposition.

## IV

Although the reactive nature of Tennort's opposition does not support creating a different legal standard, the context in which she opposed her employer's conduct is one factor to consider in determining whether she had a reasonable belief that Title VII was being violated.

Everyone agrees that the harassment observed by Tennort was not "so severe or pervasive as to alter the conditions of . . . employment and create an abusive working environment." *Breeden*, 532 U.S. at 270 (internal quotation marks and citation omitted). But the reasonable belief standard recognizes there is some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII. The existence of this gray area

---

[4] It is also not clear when the EEOC's proposed standard would apply. Its arguments for why the reasonable belief standard "simply doesn't make sense here" include some that emphasize that Tennort was a third party witness and others that emphasize the reactive nature of her opposition. Does the EEOC believe that the "reasonable belief" standard is also inapplicable in a case of reactive opposition involving a perceived victim of discrimination? It did not clarify its position on this issue in response to questioning at oral argument.

between actual violation and perceived violation is best illustrated in cases where we have affirmed summary judgment on an employee's discrimination claim while simultaneously reversing summary judgment on his or her opposition clause claim. *See, e.g., Long v. Eastfield Coll.*, 88 F.3d 300, 305–09 (5th Cir. 1996); *Parker v. State of La. Dep't of Educ. Special Sch. Dist.*, 323 F. App'x 321, 329–30 (5th Cir. 2009).

Could an employee like Tennort, not instructed on Title VII law as a jury would be,[5] reasonably believe that she was providing information about a Title VII violation? The district court thought not, based on cases from this court and the Supreme Court in which retaliation claims were dismissed because the conduct opposed consisted of isolated remarks. In *Breeden*, a female employee complained that two male coworkers had chuckled at a sexually suggestive comment found within an application file that they and the plaintiff were reviewing as part of their job duties. *See* 532 U.S. at 269, 271. In *Satterwhite v. City of Houston*, an employee complained of a coworker saying "Heil Hitler" in a work meeting. *See* 602 F. App'x 585, 586 (5th Cir. 2015) (per curiam). Both employees claimed that they were retaliated against for voicing their opposition to the conduct they observed. *Breeden*, 532 U.S. at 270; *Satterwhite*, 602 F. App'x at 588. Both claims ultimately failed on summary judgment because no reasonable person could have believed the isolated incidents complained of violated Title VII. *See Breeden*, 532 U.S. at 271; *Satterwhite*, 602 F. App'x at 588–89.

But opposition clause claims grounded in isolated comments are not always doomed to summary judgment. In *Long v. Eastfield College*, a female plaintiff complained internally after a supervisor made an offensive joke about

---

[5] *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 290 (4th Cir. 2015) (en banc) (Wilkinson, J., concurring in part and dissenting in part) ("An employee is not an expert in hostile work environment law.").

condoms in her presence.  88 F.3d 300, 309 (5th Cir. 1996).  She alleged that this initial grievance caused the supervisor to treat her differently than other employees—prompting her to lodge two other internal complaints—and eventually led to her termination. *Id*. at 305.  We affirmed summary judgment on her sexual discrimination claim because "the alleged joke in this case is exactly the type of mere offensive utterance which should not, by itself, support a claim for hostile work environment." *Id*. at 309.  But we reversed summary judgment on her retaliation claim. *Id.*  Viewing the joke and the supervisor's alleged reactions to her internal complaints together, we found that the plaintiff had "presented sufficient evidence to create a fact issue as to her 'reasonable belief' that [the supervisor's] conduct violated Title VII." *Id*. at 305.[6]

The conduct of which Tennort complained is closer to *Long* in which we concluded that the reasonable belief question should go to the jury.  She heard Harris tell Quarles that he was looking at and admiring her rear end.  Unlike *Breeden* and *Satterwhite*, this was conduct directed at a specific fellow employee.  That it came from a person in a supervisory position is another important consideration. *Cf. Satterwhite*, 602 F. App'x at 586 (stating that coworker who made offensive comment did not directly supervise the plaintiff).

---

[6] We also found a fact issue in *Glorioso v. Mississippi Department of Corrections*, 193 F.3d 517, 1999 WL 706173 (5th Cir. 1999) (per curiam).  In that case, the female plaintiff had a one-time altercation with a male colleague, in which the male colleague shouted, "You're a bitch. . . . You've been bitching all the time.  You're always a bitch . . . ." *Id*. at *1.  She filed a written grievance and was later fired. *Id*. at *2.  This court reversed summary judgment in favor of her employer, finding that the plaintiff "believed that [the colleague's] calling her a 'bitch' was '[s]exual discrimination maybe . . . .'  This evidence is sufficient to raise a genuine issue of fact as to whether [the plaintiff] held a good faith, reasonable belief that the practices she opposed were unlawful." *Id*. at *4.  We noted, however, that neither the employer nor the lower court had disputed the reasonableness of the plaintiff's belief, only whether she *in fact* so believed. *See id.*, at *4 n.6.  Consequently we had no reason or opportunity to opine on "whether a woman could reasonably believe that being called a 'bitch' under the circumstances of this case was a practice unlawful under Title VII." *Id.*

No. 15-60380

We also consider the context in which the comment was made. Harris had been Tennort's and Quarles's supervisor for less than a week. Just days earlier, Tennort saw Harris pretend to slap Quarles on the bottom and exclaim "ooh wee." While Tennort did not report the earlier behavior to Rite Way, it is relevant to how she assessed the seriousness of Harris's later comment that he was "gonna look" at Quarles's rear end because he was a man: as a chance off-color comment or as repeated conduct, something more concerning. *Cf. Byers*, 209 F.3d at 428–29 (discussing information known to the complaining employee but not revealed in his complaint in analyzing the reasonableness of the employee's belief that the employer violated Title VII).

Finally, we consider the setting in which Tennort voiced her complaint. This is where the reactive nature of Tennort's complaint sets it apart from the more common proactive opposition case. Tennort was rehired at the beginning of the 2011–2012 school year. As part of the rehiring process, she received a pamphlet informing her that "sexual harassment"—including "unwelcomed sexual . . . comments" and "other verbal or physical conduct of a sexual nature that has the purpose or effect of . . . creating an intimidating, hostile, or offensive work environment"—is a type of workplace "discrimination" that Rite Way does not tolerate. Shortly thereafter, she saw a new supervisor make two sexually-fraught and unwelcome comments to a subordinate within the span of a week. And then she was asked about one of those incidents by a member of Rite Way's human resources department—using language strongly insinuating that Rite Way would rather Tennort *not* corroborate Quarles's sexual harassment complaint and would subject her to reprisal if she did. If Tennort had not yet reached a view that Harris violated federal employment law when he made offensive comments and gestures about Quarles's rear end, the circumstances surrounding her questioning may very well have caused her to do so. We thus conclude that there is a fact issue concerning whether

12

No. 15-60380

Tennort could have reasonably believed that the conduct about which she chose to speak violated Title VII.

## V

Rite Way asks us to affirm the district court on the basis of an alternative argument presented below, which focused on the sufficiency of the EEOC's causation evidence.  It emphasizes certain customer complaints "concerning areas of the school for which Tennort was responsible," arguing that this evidence of Tennort's deficiencies is "uncontroverted."    The customer complaints constitute strong evidence of a nonretaliatory justification for Tennort's termination.[7]

But the EEOC has competing evidence that would allow a jury to find that the customer complaints were a pretextual reason for firing Tennort after she corroborated a sexual harassment claim made against her supervisor.  This evidence includes the strong temporal proximity between her written report and her termination.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 148–49 (2000) (noting that "the evidence establishing the plaintiff's prima facie case" remains relevant to pretext and that "the strength of the plaintiff's prima facie case" will factor into whether employer is entitled to judgment as a matter of law (citations omitted)).  It includes the fact that Tennort's two-year employment record with Rite Way was unimpeached until she spoke out about Harris's actions and soon thereafter became a problem employee.  *See, e.g., Evans v. City of Houston*, 246 F.3d 344, 354–56 (5th Cir. 2001) (vacating summary judgment based on, among other evidence, "the close temporal proximity between [plaintiff's] appearance at her co-worker's [race

---

[7] The school staff who complained acknowledge that they did not name any particular Rite Way employee.  Someone at Rite Way had to identify the employee at fault.  According to Tennort, her direct supervisor told her what parts of the school to clean, and these assignments changed on a regular basis.

No. 15-60380

and age discrimination] grievance hearing and her demotion" and "the lack of *any* documentary evidence dated before her appearance or demotion that would tend to support a theory of disciplinary problems"); *cf. Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024–25 (5th Cir. 2011) (similar, in case involving alleged retaliation for whistleblowing under the Federal Credit Union Act). And it includes two cryptic statements from her supervisors from which a jury could infer retaliatory intent. First, the HR manager who took her statement warned "you know what they do to people who do stuff like this." Second, the supervisor who replaced Harris—Harris's own brother-in-law—told Tennort on the first day she began working under him that Mississippi is an "at will" state and that she would be denied unemployment benefits when she was fired. Statements such as these evincing the type of animus prohibited by Title VII can be considered at the pretext stage. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) (discussing how ageist comments, along with other evidence, could support a jury finding of discriminatory intent); *see also Wright v. Southland Corp.*, 187 F.3d 1287, 1305–06 (11th Cir. 1999) (stating that a jury could find retaliatory intent on the basis of "[t]he threat of 'You will regret it,' made by a human resources director" to employee who had filed an EEOC complaint); *Rhoads v. FDIC*, 257 F.3d 373, 392–94 (4th Cir. 2001) (reversing summary judgment because there was sufficient evidence of retaliatory intent, including a supervisor's statement that plaintiff "would regret" consulting with a lawyer about her American with Disabilities Act claim).

This is not to say that the evidence would not support Rite Way's more mundane version of events. But the difficult task of resolving this "conflict in substantial evidence" falls to the jury. *Long*, 88 F.3d at 308 (internal quotation marks and citation omitted). We REVERSE and REMAND for further proceedings.

14