Dana **TALIAFERRO**, Plaintiff,

v.

**LONE STAR INSTRUMENTATION & ELECTRIC CORPORATION,** Defendant.

**MO–16–CV–46–PRM**

United States District Court, W.D. Texas, **MIDLAND DIVISION.**

Signed August 17, 2016

John S. Klassen, Klassen Law Firm, PLLC, Midland, TX, for Plaintiff.

J. Hunter Johnson, Constangy, Brooks, Smith & Prophete, LLP, Dallas, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Defendant Lone Star Instrumentation & Electric Corporation's "Rule 12(b)(6) Motion to Dismiss and Memorandum in Support" (ECF No. 3) [hereinafter "Motion"], filed on April 18, 2016, Plaintiff Dana Taliaferro's "Response in Opposition to Defendant's Motion Pursuant to Fed. R. Civ. P. 12(b)(6)" (ECF No. 5) [hereinafter "Response"], filed on May 2, 2016, and Defendant's "Reply in Support of Its Motion to Dismiss and Memorandum in Support" (ECF No. 6), filed on May 9, 2016, in the above-captioned cause. After affording Plaintiff's and Defendant's arguments due consideration, the Court concludes that Defendant's Motion should be granted for the reasons set forth below.

## I. BACKGROUND

This matter arises out of an employment lawsuit alleging retaliation. Plaintiff sets forth the following factual allegations in her Complaint. Compl. 1, Feb. 10, 2016, ECF No. 1.

Plaintiff worked as a controller for Defendant for almost one year. Compl. 1. During the evening hours of May 13, 2015, Defendant's owner and president, Ronnie Hobbs, sent Plaintiff the following text-message exchange:

**Hobbs:** Where's Chase? Or Courtney?[1]

---

1. Chase and Courtney are Plaintiff's teenage children. Compl. 3.

**Plaintiff:** Both at home, why [?]

**Hobbs:** Just came by in the Vette[2] looking for a hot date! Oh ya! You are going to be in trouble when he finds out!

*Id.* at 1, 3. According to Plaintiff, she understood that the "he" that Hobbs referred to was her husband. *Id.* at 3. In other words, Hobbs intimated that Plaintiff's husband would become upset regarding Hobbs's proposition of a "hot date." *Id.*

Subsequently, Plaintiff did show Hobbs's text-message exchange to her husband. *Id.* Although Plaintiff asserts that she never had a "sexual or romantic relationship" with Hobbs, Plaintiff's husband still became upset. *Id.*

On May 14, 2015, Plaintiff went to work despite her distress. *Id.* at 4. She spoke to Hobbs about her desire to "keep her job." *Id.* Additionally, Hobbs "expressed regret about his actions" and assured Plaintiff that she could continue to work for Defendant "for as long as she desired." *Id.*

Two days after Hobbs's text-message exchange, on May 15, 2015, Plaintiff again went to work. *Id.* Once more, Plaintiff and Hobbs discussed his text messages. *Id.* During their conversations, Plaintiff "complained at some length about the severe personal aftermath caused by his text messages." *Id.* Hobbs subsequently granted Plaintiff's request to "have some personal time off to deal with family issues caused by the messages." *Id.*

Later that same evening, Hobbs terminated Plaintiff via another text message. *Id.* According to the Complaint, Hobbs indicated to Plaintiff that he received a "threat" from Plaintiff's husband. *Id.* at 5. This "threat" coupled with the "awkward" situation for "everyone" were Hobbs's purported grounds for Plaintiff's termination. *Id.*

Plaintiff further avers that Defendant violated its own Employee Handbook, which not only contains a purported "zero tolerance policy for sexual propositions, innuendo, suggestive comments, and sexually-oriented jokes or teasing," but also forbids retaliation against anyone who reports "harassment." *Id.* at 6–7 (alterations omitted). The Employee Handbook further requires that employees "notify their supervisor so the situation can be promptly investigated and remedied." *Id.* at 6.

After filing her Equal Employment Opportunity Commission ("EEOC") complaint, Plaintiff now brings two causes of actions against Defendant: (1) violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), for retaliation and (2) breach of contract for violating Defendant's Employee Handbook. *Id.* at 7–8.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Davila v. United States,* 713 F.3d 248, 255 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal quotation marks omitted). While a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d

---

**2.** "'Vette' is a descriptive word, describing a [Chevrolet] Corvette automobile." *See Vette Shop, Inc. v. Roy,* 542 F.2d 20, 21 (6th Cir. 1976) (per curiam). Plaintiff alleges that Hobbs does own a Corvette. Compl. 3.

929 (2007)) (internal quotation marks omitted), it must state "more than labels and conclusions": "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Thus, at this stage, the Court must determine whether the well-pleaded facts in Plaintiff's Complaint, taken as true and viewed in the light most favorable to Plaintiff, are sufficient to "move [her] claim 'across the line from conceivable to plausible.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

## III. DISCUSSION

### A. Retaliation Pursuant to Title VII

■ To establish a prima facie case of retaliation, Plaintiff must establish the following elements: "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).[3] As to the first element, "[a]n employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir. 1998)

(quoting 42 U.S.C. § 2000e–3(a)). "The first of these is known as the 'opposition clause;' the second as the 'participation clause.'" *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016).

The participation clause is inapplicable in the instant action. Here, Plaintiff did not file her EEOC charge until June 22, 2015—over one month after she purportedly suffered the retaliatory dismissal. *See* Compl. 8; *see also Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) ("[T]he 'participation clause' is irrelevant because [the plaintiff] did not file a charge with the EEOC until after the alleged retaliatory discharge took place.").

■ Therefore, the Court will analyze the first element of Plaintiff's prima facie case of retaliation pursuant to the "opposition clause." "[T]he opposition clause does not require opposition alone; it requires opposition *of a practice made unlawful by Title VII. Rite Way Serv., Inc.*, 819 F.3d at 240 (emphasis in original) (citing 42 U.S.C. § 2000e–3(a)). Plaintiff need not prove that Defendant's practices were actually unlawful, but only that she had "a reasonabl[e] belief that the employer was engaged in unlawful employment practices." *Byers*, 209 F.3d at 428 (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)). Thus, the inquiry before the Court is whether the text-message exchange from her employer suggesting a tryst would cause Plaintiff to have "a reasonabl[e] belief that the employer was engaged in unlawful employment practices." *See Byers*, 209 F.3d at 428.

---

**3.** The Court notes that Title VII claims only affect employers that have at least fifteen employees. *See* 42 U.S.C. § 2000e(b). The Supreme Court has recognized "that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). However, Plaintiff has neither alleged nor has Defendant raised this threshold employee issue.

While the Fifth Circuit has considered many cases involving claims of retaliation, the parties have not provided any case that is controlling given the facts at hand. Nevertheless, three cases are instructive. For example, in *Clark County School District v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam), a female employee complained that two male coworkers had chuckled at a sexually-suggestive comment found within an application file where the applicant once told a colleague, "I hear making love to you is like making love to the Grand Canyon." 532 U.S. at 269, 121 S.Ct. 1508. After the female employee indicated she did not understand this comment in the application file, one male coworker replied, "Well, I'll tell you later." *Id.* In *Satterwhite v. City of Houston*, an employee complained of a coworker saying "Heil Hitler" in a work meeting. *See* 602 Fed.Appx. 585, 586 (5th Cir. 2015) (per curiam). In *Turner v. Baylor Richardson Medical Center*, an African–American employee complained of her supervisor's racially insensitive remarks, including an incident when the supervisor referred to inner-city children as "ghetto children." 476 F.3d 337, 342 (5th Cir. 2007). After being terminated, the employee filed suit alleging, among other claims, unlawful retaliation. *Id.* at 345.

In these three instances, employees claimed that their respective employers retaliated against them for voicing their opposition to the conduct that they observed. *Breeden*, 532 U.S. at 270, 121 S.Ct. 1508; *Satterwhite*, 602 Fed.Appx. at 588; *Turner*, 476 F.3d at 345. These "claims ultimately failed on summary judgment because no reasonable person could have believed the *isolated* incidents complained of violated Title VII." *Rite Way Serv., Inc.*, 819 F.3d at 243 (emphasis added) (*citing Breeden*, 532 U.S. at 271, 121 S.Ct. 1508; *Satterwhite*, 602 Fed.Appx. at 588–89); *cf. Rite Way Serv., Inc.*, 819 F.3d at 243–44 (noting that *repeated* sexually-fraught and unwelcome comments directed at specific fellow employee that came from person in supervisory position were important considerations under anti-retaliation provision when determining whether plaintiff had reasonable belief that Title VII was being violated).

 Tasked with a different standard than the *Breeden, Satterwhite, Turner* courts, the Court must conduct a Rule 12(b)(6) analysis. With this in mind, the Court finds that Plaintiff's allegation regarding a single comment about a "hot date" would not lead to a reasonable belief that an unlawful employment practice occurred. *See Byers*, 209 F.3d at 428. Indeed, Plaintiff has never alleged that Hobbs made sexual advances toward her. If true, Hobbs's comment, while insensitive, inappropriate, and unbecoming, was neither sexually explicit nor was it pervasive. Rather, Hobbs's comment was an isolated incident. Without more, Hobbs's text-message exchange about a "hot date" does not amount to severe or pervasive harassment that would lead to a reasonable belief of that an unlawful employment practice occurred. *See id.* The Court concludes that the average person, similarly situated in the circumstances asserted by Plaintiff, would not reasonably believe that an unlawful employment practice occurred. This conclusion is "based on cases from th[e] [Fifth Circuit *Satterwhite* and *Turner*] court[s] and the [*Breeden*] Supreme Court in which retaliation claims were dismissed because the conduct opposed consisted of isolated remarks." *See Rite Way Serv., Inc.*, 819 F.3d at 242. An employee cannot establish "a prima facie case of retaliation because the employee '[can] not [ ] reasonably believe[ ]' that [ ] *isolated comments* constitute[ ] an unlawful employment practice." *See Satterwhite*, 602 Fed.Appx. at 589 (quoting *Turner*, 476 F.3d at 349) (emphasis added). "As a matter of law, repri-

mands and isolated comments do not rise to the level necessary to support a cause of action for retaliatory hostile work environment." *Rowe v. Jewell*, 88 F.Supp.3d 647, 677 (E.D. La. 2015) (citing *Aristyld v. City of Lauderhill*, 543 Fed.Appx. 905, 909 (11th Cir. 2013)).

Because Plaintiff has failed to meet the first element of her prima facie case of retaliation that she participated in an activity protected by Title VII, the Court need not address the other two prongs. Consequently, the Court will dismiss Plaintiff's retaliation claim.

### B. Contractual Breach of Employee Handbook

▮ Federal courts have supplemental jurisdiction over state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (citing 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.")). Section 1367(c) provides a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if ... the district court has dismissed all claims over which it has original jurisdiction." "When a district court has dismissed all federal claims from a cause before trial, the general rule in our Circuit directs district courts to decline to exercise jurisdiction over supplemental state law claims." *Burkett v. City of El Paso*, 513 F.Supp.2d 800, 823 (W.D. Tex. 2007).

▮ Because the Court has dismissed the claim over which it has original juris-

diction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law breach-of-contract claim and to dismiss it without prejudice. § 1367(c)(3); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Lone Star Instrumentation & Electric Corporation's "Rule 12(b)(6) Motion to Dismiss and Memorandum in Support" (ECF No. 3) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Dana Taliaferro's Title VII claim is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff Dana Taliaferro's breach-of-contract claim for violating Defendant's Employee Handbook is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that all settings in this matter are **VACATED.**

**IT IS FURTHER ORDERED** that all pending motions filed in the above-captioned cause, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the **CLERK** of the Court shall **CLOSE** this matter.