# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-51152

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2017

Lyle W. Cayce
Clerk

DANA TALIAFERRO,

> Plaintiff – Appellant,

v.

LONE STAR IMPLEMENTATION & ELECTRIC CORPORATION,

> Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:16-CV-46

Before JONES, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Dana Taliaferro appeals the dismissal of her Title VII retaliation claim. Taliaferro argues that the district court erred by failing to consider the "zero tolerance" policy in Lone Star's Employee Handbook when determining whether Taliaferro sufficiently pleaded a reasonable belief that she was subject to unlawful employment practices. Even taking the Employee Handbook into account, Taliaferro has failed to state a claim. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-51152

**I.**

Taliaferro worked as the Controller of Lone Star Instrumentation & Electronic Corporation for approximately one year. During the evening hours of May 13, 2015, Lone Star's owner and President, Ronnie Hobbs, sent Taliaferro a text-message asking where her children were. Taliaferro responded that they were both at home and asked why he wanted to know. Hobbs replied: "Just came by in the Vette[1] looking for a hot date! Oh ya! You are going to be in trouble when he finds out!"

Taliaferro was flummoxed by the messages as she did not have a personal relationship with Hobbs. She showed the messages to her husband, who reacted with "vitriolic fury." He concluded from the messages that Hobbs was making sexual overtures to his wife and that the two were having an affair. These messages caused severe strain on Taliaferro's marriage.

Taliaferro was upset when she came to work the next day. She explained to Hobbs that she needed and wanted to keep her job. Hobbs expressed regret about his actions and told her that she would have a job at Lone Star for as long as she desired. The following day, Taliaferro complained again to Hobbs about the severe personal aftermath caused by his text-messages. Taliaferro requested time off to deal with these issues, and Hobbs agreed. Later that same evening, two days after his initial message, Hobbs terminated Taliaferro with the following text-message:

> Dana, I have been thinking for the past couple of days and unfortunately I think it best if you no longer work for Lone Star. It has made everyone including myself very awkward and I can't afford to have someone running my company who's [sic] husband and best friend want to see Lone Star fail and who threaten me.

---

[1] "Vette" appears to refer to a Chevrolet Corvette.

No. 16-51152

Taliaferro further alleges that it took her approximately ten weeks to find new employment and that she suffers significant and ongoing emotional distress as a result of Hobbs's messages.

Taliaferro filed a complaint with the Equal Employment Opportunity Commission, received a right-to-sue letter from the Commission, and sued Lone Star. She alleged that her termination by Lone Star constituted retaliation, in violation of Title VII and in breach of a contractual obligation created by the company's Employee Handbook. The district court dismissed her Title VII claim under Federal Rule of Civil Procedure 12(b)(6) on the ground that she did not adequately plead facts showing she reasonably believed a single text-message conversation constituted an unlawful employment practice. Having dismissed Taliaferro's federal claim, the district court declined to exercise supplemental jurisdiction over her state breach-of-contract claim. Accordingly, it entered a final judgment dismissing the Title VII claim with prejudice and dismissing the contract claim without prejudice.

Taliaferro appeals the dismissal of her Title VII claim on the ground that the district court failed to consider how the "zero tolerance" policy articulated in the company's Employee Handbook affected the reasonableness of her belief that the text-messages constituted an unlawful employment practice. She does not challenge the dismissal of her contract claim.

## II.

We review a Rule 12(b)(6) dismissal *de novo*. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "We accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *New Orleans v. Ambac Assurance Corp.*, 815 F.3d 196, 199–200 (5th Cir. 2016). To avoid 12(b)(6) dismissal, the complaint must contain "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To establish a prima facie case of retaliation, an aggrieved employee must establish the following elements: "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). As to the first element, "[a]n employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e-3(a)). "The first of these is known as the 'opposition clause;' the second as the 'participation clause.' " *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016).

This case involves the opposition clause.[2] "[T]he opposition clause does not require opposition alone; it requires opposition *of a practice made unlawful by Title VII.*" *Id.* at 240 (citing 42 U.S.C. § 2000e-3(a)). Taliaferro need not prove that the conduct she opposed rose to the level of a Title VII violation, but she "must at least show a reasonable belief that it did." *Id.* at 237. In determining what constitutes a reasonable belief that a Title VII violation has occurred, we have emphasized the importance of the "severity" and "frequency" of the alleged conduct. *Satterwhite v. City of Hous.*, 602 F. App'x 585, 588 (5th

---

[2] The "participation clause" is inapplicable here because Taliaferro did not file her EEOC charge until June 22, 2015, more than one month after Lone Star terminated her employment. Thus, the purported retaliatory action took place before Taliaferro participated in an investigation, proceeding, or hearing under Title VII.

Cir. 2015).[3] We also consider the "context in which [the employee] opposed her employer's conduct." *Rite Way*, 819 F.3d at 242.

For example, in *Clark County School District v. Breeden*, 532 U.S. 268 (2001), the Supreme Court affirmed a district court's grant of summary judgment. A female employee complained that two male co-workers had laughed when reading a job application file, which noted that the applicant had once told a co-worker, "I hear making love to you is like making love to the Grand Canyon." *Id.* at 269. One of the men looked at the plaintiff and said, "I don't know what that means." *Id.* The other employee then said, "Well, I'll tell you later," and both men laughed. *Id.* The Supreme Court held that summary judgment was appropriate because "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard." *Id.* at 271.

In *Satterwhite*, we affirmed summary judgment for similar reasons. There, the plaintiff claimed he suffered retaliation after he reported a co-worker to their human resources department for allegedly saying "Heil Hitler" at work. *Satterwhite*, 602 F. App'x at 586. Because the plaintiff complained of a single and isolated comment that was not directed at a specific employee, we held that "he could not have reasonably believed that this incident was actionable under Title VII." *Id.* at 589.

By contrast, in *Rite Way*, we reversed a grant of summary judgment because we determined that there was a fact issue concerning whether the plaintiff reasonably believed that the reported conduct violated Title VII. *Rite Way,* 819 F.3d at 244. The plaintiff witnessed two troubling interactions

---

[3] Although these are important factors, we recognize that they are not dispositive. *See Rite Way,* 819 F.3d at 243 ("Opposition clause claims grounded in isolated comments are not always doomed to summary judgment.").

No. 16-51152

between her newly assigned supervisor and another co-worker. *Id.* at 238. In the first, the supervisor pretended to slap the plaintiff's co-worker on the bottom and exclaimed "ooh wee." *Id.* A few days later, the plaintiff witnessed the supervisor reference a cellphone in the same co-worker's back pocket and say that her pants were too tight. *Id.* When the co-worker took offense, the supervisor said, "I'm a man, I'm gonna look." *Id.* During a subsequent investigation of this incident, Rite Way's Project Manager tried to talk the plaintiff out of reporting what she had seen, telling her, "you know what they do to people who do stuff like this." *Id.* In determining that the plaintiff could have reasonably believed an unlawful employment practice occurred, we considered that she witnessed two incidents and that the Project Manager discouraged her from corroborating her co-worker's allegations. *Id.* at 243–44. We also considered a pamphlet outlining the company's sexual harassment policy as a relevant circumstance. *Id.* at 244.

In this case, the district court dismissed Taliaferro's claim on the ground that her complaint failed to adequately allege grounds for a reasonable belief that Hobbs's text-messages constituted an unlawful practice under Title VII. The court noted that Hobbs's conduct, "while insensitive, inappropriate, and unbecoming, was neither sexually explicit nor was it pervasive." *Taliaferro v. Lone Star Instrumentation & Elec. Corp.*, 212 F. Supp. 3d 714, 718 (W.D. Tex. 2016). On appeal, Taliaferro claims that the district court did not consider what effect the strict "zero tolerance" policy in Lone Star's Employee Handbook has in evaluating what constitutes a reasonable belief that an unlawful employment practice occurred.[4]

---

[4] The district court did not expressly address the Employee Handbook but did base its determination on "the circumstances asserted by Plaintiff." *Id.* at 718.

No. 16-51152

Taliaferro points to the Committee Notes section of the Fifth Circuit's Pattern Jury Instructions, which stipulate that the employee's belief must be objectively reasonable "in light of the circumstances." Fifth Circuit Pattern Jury Instructions (Civil Cases) § 11.5a at 153 n.4 (2014). Taliaferro asserts that the Employee Handbook is among the circumstances that contributed to her belief that the text-messages she received from Hobbs amounted to an unlawful employment practice. She argues that when considering her belief in light of the Employee Handbook, a jury could conclude that her belief was reasonable.

Taliaferro is correct that all relevant circumstances should be considered when evaluating whether an employee has adequately pleaded a reasonable belief that an unlawful employment practice has occurred. *Id.* Lone Star's Employee Handbook may be considered as one of the relevant circumstances. *See Rite Way*, 819 F.3d at 244 (treating an employment policy as one of several relevant circumstances but not as dispositive). In particular, Taliaferro points to section 90 of the Employee Handbook, which states that Lone Star has a "zero tolerance" policy for "sexual propositions, innuendo, suggestive comments, [and] sexually-oriented jokes or teasing[.]" However, a reasonable employee would not believe, based on the Employee Handbook, that telling a single sexually-oriented joke was unlawful. Rather, a reasonable employee would understand that the company was being proactive in curtailing conduct before it arose to unlawful discrimination. Moreover, employee handbooks, like the one at issue here, commonly proscribe a range of lawful conduct so as to address misconduct before it becomes a legal problem. Thus, Taliaferro's complaint, which relies on a single text-message exchange and the Employee Handbook language, is insufficient to state a claim for retaliation under Title VII. Simply put, the Employee Handbook may be considered along with all

7

No. 16-51152

other relevant circumstances, but the "zero tolerance" policy in the Employee Handbook alone does not give rise to a claim where one otherwise does not exist.

For the foregoing reasons, the judgment of the district court is AFFIRMED.